## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| **NEXTECH OPERATIONS, LLC.** : | |
| : | |
| **Plaintiff,** : | |
| : | **Case No. _____** |
| **v.** : | |
| : | |
| **MARC JAFFE and** : | |
| **COMSOURCES LLC,** : | |
| : | |
| **Defendants.** : | |

## COMPLAINT

Plaintiff NexTech Operations, LLC ("Plaintiff") brings this Complaint against Defendants Marc Jaffe ("Jaffe") and ComSources LLC (together with Jaffe, collectively "Defendants"), seeking injunctive relief and money damages to address Defendant Jaffe's violation of the U.S. Computer Fraud & Abuse Act ("CFAA"), 18 U.S.C. §§ 1030, *et seq.*, misappropriation of trade secrets in violation of the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. §§ 1831, *et seq.*, and breach of the non-competition and non-solicitation covenants Jaffe entered into in connection with a sale of business, including specifically Jaffe's operation of a competitive business nearby to Plaintiff, and his solicitation of other employees and contractors of Plaintiff to leave their employment to join Jaffe at a competing business, ComSources LLC.  Jaffe's tortious conduct and contractual breaches have been unlawfully aided, abetted by, and executed through and in conspiracy with, ComSources LLC and other employees and personnel of ComSources LLC.  In support of the foregoing, Plaintiff avers as follows:

## THE PARTIES

1.     NexTech Operations, LLC is a limited liability company organized under the laws of the State of Delaware.

2.      NexTech Operations, LLC was formed to purchase the assets of NexTech Partners, Inc. (together with NexTech Operations, LLC, sometimes referred to as "NexTech").  NexTech has two primary segments to its business: (a) e-waste services, recycling end-of-life and out-of-service computer and networking hardware, such as cell phones, tablets, computers, servers, monitors, and other materials,  ensuring customers that their legacy equipment is not only securely disposed of, but also done so in an environmentally safe way; and (b) purchasing and selling used and excess information technology gear.

3.      ComSources LLC is a limited liability company organized under the laws of the State of Mississippi, which first registered with the State of Mississippi as a limited liability company on March 19, 2020.  According to its website, ComSources LLC buys decommissioned and excess IT hardware, including "office phones, networking hardware, servers, storage arrays, desktops, laptops, and more," and sells refurbished equipment.

4.      Jaffe is an individual who is a resident of the State of Minnesota.  Jaffe was previously an employee and co-owner of NexTech and is presently the Chief Executive Officer of ComSources LLC.

**JURISDICTION, VENUE, AND GOVERNING LAW**

5.      This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1331, as this matter involves causes of action arising under the CFAA, 18 U.S.C. §§ 1030, *et seq.*, and the DTSA, 18 U.S.C. §§ 1831, *et seq.*  The Court has supplemental jurisdiction over the breach of contract and other state law claims herein pursuant to 28 U.S.C. § 1367 because the claims are so related to the CFAA and DTSA claims for which this Court has original jurisdiction that they form part of the same controversy.

6.      This Court may exercise personal jurisdiction over the parties because, *inter alia*, the genesis of this matter is an Asset Purchase Agreement ("APA") between NexTech Operations,

LLC on one side, and Defendant Jaffe on the other, under which Jaffe, together with other co-owners, sold his interest in NexTech Partners, Inc. to NexTech Operations, LLC.  Section 9.5 of the APA states in relevant part that "[t]his Agreement **shall** be construed in accordance with and governed by the laws of the State of Delaware . . . " and "[t]he  parties agree that any dispute of controversy arising between the parties relating to or in connection with this Agreement **shall** be submitted to and heard by a state or federal court located in the State of Delaware." See the relevant portions of the APA attached hereto as **Exhibit "A"** at § 9.5 (emphasis added).  All of Plaintiff's claims stem directly from the APA.  Defendant ComSources LLC has knowingly and intentionally tortiously interfered with an agreement calling for Delaware jurisdiction and venue for resolution of disputes, and accordingly has submitted itself to the jurisdiction of this Court for claims arising out of such conduct. Moreover, while ComSources LLC opted not to list its members in its organizational filing with the Secretary of State in Mississippi, in light of the fact that by all appearances he is the driving force behind its formation, launch and operation within a matter of days of his resignation from NexTech, Plaintiff has reason to believe and thereon alleges that Defendant Jaffe, who has assented to jurisdiction in this Court, is a member of ComSources LLC.

7.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the parties have contracted for Delaware venue with regard to any dispute arising out of the APA.  See Ex. A at § 9.5.

### THE FACTS

### *NexTech Operations, LLC Purchases NexTech Partners, Inc. from Jaffe and Others*

8.     Jaffe was a co-owner and key sales employee of NexTech Partners, Inc. until the 2018 sale of its assets to NexTech Operations, LLC.  Jaffe and his business partners, Bradley Cohen, Neil Cohen, Henry Clay Watters, and Clint Sims, owned all the issued and outstanding shares of common stock of NexTech Partners, Inc.  **Ex. A** at Recital C, p. 1.

9.     On May 7, 2018, NexTech Operations, LLC purchased assets of NexTech Partners, Inc. from Jaffe and the other shareholders, pursuant to the terms and conditions of the APA and related agreements, in exchange for cash payments and payment of debts of the Seller.

10.     Following NexTech Operations, LLC's acquisition of NexTech Partners, Inc., NexTech hired Jaffe to continue to serve as a sales representative for the company.  Jaffe continued to work in that capacity for NexTech until Sunday night, March 15, 2020, when he resigned his employment with NexTech effective at once, and was followed immediately thereafter by two more NexTech employees resigning that same night: Derek Bond followed Jaffe just minutes later, and Brandon Cockrell emailed his resignation a little less than two hours later.

### *The Relevant Terms of the APA*

11.     In connection with and as an express condition of NexTech Operations, LLC's acquisition of assets of NexTech Partners, Inc., Defendant Jaffe promised to abide by a number of post-closing restrictive covenants, which control his obligations to Plaintiff, both during and after his employment.

12.     Section 7 of the APA contains a set of covenants Jaffe agreed to, including among them the following valid and enforceable restrictive covenants:

> 7.1.2   Noncompetition.    In  further  consideration  of  the consummation  of  the  transactions  contemplated  herein, during  the  Applicable  Non-Competition  Period,  Seller  and each  Shareholder,  and  any  Affiliate  of  Seller  or  any Shareholder, will not, either directly or indirectly, whether or  not  for  considerations,  (a)  solicit  business  from  or otherwise  compete  with  Buyer  in  the  Business  anywhere  in the  United  States;  (b)  operate,  control,  advise,  be  engaged by,  perform  any  consulting  services  for,  invest  in  or otherwise  become  associate  din  any  capacity  with,  any business,       company,       partnership,       organization, proprietorship,  or  other  entity,  who  or  which,  operates  in the  Business  anywhere  in  the  United  States;  or  (c)  engage  in  any practice  the  purpose  of  which  is  to  evade  the  provisions  of this covenant[.]

4

**(Ex. A** at § 7.1.2.).

       7.1.3   <u>Noninterference.</u>    In further consideration of the consummation of the transactions contemplated herein, during the Applicable Non-Competition Period, Seller and each Shareholder covenant and agree that Seller and such Shareholder and the Affiliates of Seller and any Shareholder will not, directly or indirectly, without the prior written consent of buyer (a) solicit, induce or attempt to solicit or induce, whether or not for consideration, any employee or agent of Buyer to terminate his or her relationship with Buyer; (b) induce or attempt to induce any supplier, contractor, or customer of Buyer to terminate or adversely change its relationship with Buyer; or (c) offer to hire or hire any Person who was an employee of Seller prior to the Closing or an employee of Buyer under twelve (12) months after such individual's employment relationship with Buyer has been terminated; <u>provided</u>, <u>however</u>, that any general solicitation or advertisement not specifically directed at such employees, agents, suppliers, contractors or customers shall not be deemed a violation of clause (a) or (b) above.

**(Ex. A** at § 7.1.3.).

       7.1.4   <u>Remedy for Certain Breaches</u>.  Seller and each Shareholder acknowledge that the covenants in this <u>Section 7.1</u> were negotiated at arm's length, are required for the fair and reasonable protection of Buyer, that Buyer would not have purchased the Purchased Assets had Seller and the Shareholders not agreed to these covenants, that the restrictions contained herein are designed to protect the business of Buyer and to ensure that Seller and the Shareholders do not engage in unfair competition with Buyer, and **that the obligations of Buyer in this Agreement constitute adequate consideration for Seller's and the Shareholders' obligations** under this <u>Section 7.1</u>.

           Seller and each Shareholder further acknowledge and agree that a breach of any of the covenants, obligations or agreements set forth in this <u>Section 7.1</u> **may result in irreparable and continuing damage to Buyer in its business and property for which there be no adequate remedy at law**, and Seller and each Shareholder agree that in the event of any such breach, Buyer shall be

**entitled to injunctive relief to restrain such breach** by Seller or any Shareholder without the necessity of proof of actual damages or the posting of a bond, and to such other and further relief (including damages) as is proper under the circumstances.

(**Ex. A** at § 7.1.4 (emphasis added)).

9.13 <u>Certain Defined Terms</u>.

"<u>Applicable Non-Competition Period</u>" means

(c) . . . under the shorter of (i) the fifth(5th) anniversary of the Closing date, (ii) the eighteen (18th) month anniversary of the date that such Shareholder is no longer employed or providing consulting services to Buyer due to such Shareholder terminating his employment without Good Reason or Buyer terminating such Shareholder's employment with Cause prior to the fifth (5th) anniversary of the Closing Date; or (iii) the date that such Shareholder is no longer employed or providing consulting services to Buyer due to such Shareholder terminating his employment with Good Reason or Buyer terminating such Shareholder's employment without Cause.

"<u>Cause</u>" means the occurrence of any of the following events during the time such Seller is employed by Buyer: (a) such Seller's conviction of, or plea of guilty or *nolo contendere* to, a felony or any crime or moral turpitude; (b) such Seller's fraud, misappropriation or embezzlement of any business opportunity, funds or property of Buyer, whether attempted or actual; (c) such Seller's use of alcohol or any controlled substance that renders such Seller unable to perform his duties to Buyer; (d) such Seller's breach of this Agreement or the LLC Agreement or Failure to adhere to a written rule or policy of Buyer or a directive of the Board[.]

"<u>Good Reason</u>" means the occurrence of any of the following without the prior written consent of the applicable Seller during the time such Seller is employer by Buyer: (a) the assignment to such Seller of duties materially inconsistent with his position; (b) any material reduction in such Seller's commission rate, except where such reduction is generally applicable to all members of Buyer's sales team; or (c) a transfer of such Seller (other than on a temporary basis), to a location more than fifty (50) miles from the current location that such Seller works.

(**Ex. A** at § 9.13).

### *Jaffe Resigns from NexTech without "Good Reason"*

13.     On March 15, 2020 Jaffe terminated his employment with NexTech.  A true and correct copy of Jaffe's resignation correspondence is attached hereto as **Exhibit "B."**

14.     Fully aware that he was contractually restricted from, *inter alia*, directly or indirectly competing with NexTech and soliciting any employees, suppliers, contractors, or clients of NexTech for a period of eighteen (18) months after his resignation, Jaffe made a tenuous attempt to establish "Good Reason" (as that term is defined in Section 9.12 of the APA) for his resignation in an effort to circumvent his contractual obligations.

15.     Specifically, in his resignation correspondence Jaffe wrote that "recent changes to our comp plan have severely limited my ability to generate income for my family and for the company," apparently attempting to establish a material reduction in his commission rate—one of the three limited bases for establishing "Good Reason" under Section 9.13 of the APA.  See **Ex. B,** at p. 1.

16.     However, because the changes referenced by Jaffe were directed at *all salespersons* in NexTech's core line of business to establish formal guidelines to approve sales deals in order to improve the financial health of NexTech, the compensation changes generally affected all members of the team.  Thus, per Section 9.13 of the APA, Jaffe has not suffered a material reduction in his commission rate sufficient to establish "Good Reason" for his resignation.  See **Ex. A** at §9.13(defining "Good Reason" to include "any material reduction in such Seller's commission rate, except where such reduction is generally applicable to all members of Buyer's sales team").

17.     Jaffe was not involuntarily terminated by NexTech.  Rather, he resigned.  Jaffe did not resign as a result of the occurrence of any of the three limited "Good Reason[s]" set forth in

Section 9.13 of the APA.  Accordingly, Jaffe is bound by the restrictive covenants in Section 7.1 for a period of eighteen (18) months from the date of his resignation.

### *Jaffe Joins and Leads ComSources LLC, a Competing Venture, and Solicits Other NexTech Employees to Join Him*

18.     Very shortly following his March 15, 2020 resignation, if not before, Jaffe became Chief Executive Officer of a new company, Defendant ComSources LLC, with its primary business location nearby Plaintiff's primary location in Mississippi.

19.     According to ComSources LLC's website, ComSources LLC operates in the exact same lines of business as NexTech—that is, buying and recycling decommissioned and excess IT hardware, including cell phones, office phones, networking hardware, servers, tablets, computers, and more, and selling refurbished equipment.

20.     As such, ComSources LLC is a direct competitor of NexTech.

21.     By forming and operating the competing business ComSources LLC immediately upon terminating his employment without "Good Reason," Defendant Jaffe has intentionally and willfully disregarded and breached his contractual non-compete restrictions as set forth in Section 7.1.2 of the APA.

22.     Further, upon information and belief, prior to or at the time of his resignation from NexTech, Jaffe began soliciting, recruiting, and inducing other NexTech employees to join him in his competing venture.

23.     Indeed, two other NexTech employees, Derek Bond and Brandon Cockrell, also resigned, effective immediately, via email on March 15, 2020, the same day as Jaffe.  The resignations all took place outside of normal business hours, late in the evening on a Sunday night (with one coming just after midnight, and thus technically Monday, March 16):

| Resigning Employee | Time of Resignation Email | To Whom Addressed |
|---|---|---|
| Marc Jaffe | 10:13 pm EDT | CEO Brad Cohen |
| Derek Bond | 10:30 pm EDT | CEO Brad Cohen |
| Brandon Cockrell | 12:09 am EDT | "everyone@" NexTech |

24.     The resignations included two sales representatives and one operations person, and were timed and staged for impact, with the third of the three being circulated to all employees of the company via an "everyone@" email address.

25.     Upon information and belief, Jaffe targeted, solicited, and induced Bond and Cockrell to leave NexTech and join him at ComSources LLC while he was still working for NexTech.

26.     According to ComSources LLC's website, Bond, who was formerly NexTech's Operations Manager, is now the Chief Operating Officer of ComSources LLC, and Cockrell, a former NexTech sales representative, is now ComSources LCC's President.   True and correct screenshots of ComSources LLC's website showing their positions held are attached hereto as **Exhibit "C."**

27.     These two former employees are not the only NexTech affiliates who have been solicited by Jaffe directly and/or indirectly through ComSources LLC.   On March 31, 2020, NexTech terminated its relationship with Wells Richards, an independent contractor of NexTech who had provided financial planning, accounting, and business development services.   According to records of the State of Mississippi Secretary of State, Richards also is the registered agent and manager of ComSources LLC.

28.     In addition, Jaffe has also hired another former NexTech employee, Lynn Bond, whose role was accounting.   Bond had resigned from NexTech a few months earlier.

29.     Based on the fact that Jaffe has carefully targeted operations, sales, and accounting personnel to join him in his competing operation at ComSources LLC, and that he and ComSources LLC have completely disregarded Jaffe's contractual non-competition and non-solicitation obligations in doing so, NexTech believes and thereon alleges that Jaffe, ComSources LLC and the employees Jaffe has wrongfully recruited away from NexTech intended to hamper NexTech's ability to compete, and that further, Jaffe, ComSources LLC and/or the employees Jaffe wrongfully recruited away either already have, or will shortly, commence soliciting and inducing NexTech clients to transfer their business and relationships to their new venture at ComSources LLC, in further breach of Jaffe's contractual and other legal obligations to NexTech.

30.     The restrictive covenants in the APA are valid and enforceable and Jaffe has brazenly violated them, and continues to do so, in order to operate a competing venture to offer the same or similar services and to divert NexTech's personnel, business and/or clients to Jaffe's new venture at ComSources LLC.

### *Jaffe Improperly Accesses and Impairs Plaintiff's Computer Systems and Destroys Data*

31.     In addition to ignoring the terms of the restrictions he agreed to in the APA, Jaffe engaged in further misconduct as he prepared for his sudden resignation from NexTech. Specifically, upon review of NexTech computers and systems following the resignation of Jaffe, Bond and Cockrell, NexTech discovered that all emails between and among Jaffe, Bond and Cockrell had been deleted from their respective firm mailboxes (hereinafter, the "Deleted Emails"). The Deleted Emails are not recoverable, neither locally via the on-site systems, nor via NexTech's email service provider.

32.     Jaffe, Bond and Cockrell worked with each other for an extended period of time at NexTech, such that there should be substantial email traffic between and among the three of them existing in their respective company email boxes.  Yet none exists at all at this time.

33.     This leads NexTech to believe, and thereon to allege, that in connection with his planned resignation, Jaffe took steps to delete the Deleted Emails from NexTech's computer system, acting either directly to do so himself, and/or acting indirectly in concert or participation with Bond, Cockrell and/or others.

34.     The Deleted Emails would have contained information about day-to-day activities of NexTech that would be valuable for NexTech to have access to as it was working, and continues to work, to transition responsibilities to other NexTech personnel.  The Deleted Emails also may have contained information exchanged among fellow sales representatives, or among sales and operations personnel, relating to ongoing projects, to pricing, to sales status, and/or sales opportunities relating to NexTech clients and/or potential clients.  The fact that Jaffe and/or his co-conspirators went to the trouble to delete the Deleted Emails only reinforces NexTech's belief that the Deleted Emails contained commercially useful information, to which Jaffe and others wanted to deny NexTech access.

35.     Moreover, in light of the obviously coordinated cascade of sudden resignations of Jaffe, Bond and Cockrell, NexTech has reason to suspect that the Deleted Emails were deleted, at least in part, in order to destroy evidence of pre-resignation misconduct, improper planning, and/or other wrongful conduct of Jaffe, Bond and/or Cockrell.

36.     In addition to the foregoing, a review of NexTech computer records and data has revealed that Jaffe unauthorizedly accessed NexTech computer systems after his sudden resignation on Sunday night, March 15.  Specifically, Jaffe unauthorizedly accessed both the

NexTech "NetSuite" system and the NexTech "Bitrix" system after he had resigned and ceased working for NexTech.

37.    The NetSuite and Bitrix systems at NexTech both contain important - and in many cases confidential - business information that NexTech uses to conduct its business in interstate commerce.

38.    In addition to the Deleted Emails, NexTech is investigating whether additional material has been deleted or if the operation and/or integrity of NexTech's systems and data has been further impaired.  The fact that the Deleted Emails were, in fact, deleted, leads NexTech to be concerned that other information may also have been deleted.  Moreover, one of the laptops formerly used by one of the departed employees upon inspection was found to be missing its hard drive.

39.    NexTech has suffered substantial costs incurred and to be incurred to address the foregoing conduct and to investigate the extent of any further unauthorized access and/or impairment of NexTech systems and data, amounting in excess of $5,000, including but not limited to costs of computer forensic professionals.

### *Jaffe Misappropriates NexTech Confidential Business Information*

40.    NexTech has further learned that on the Friday prior to his Sunday night resignation, Jaffe engaged in a highly suspicious pattern of activity in NexTech's computer system, leading NexTech to believe, and thereon to allege, that Jaffe misappropriated NexTech confidential and/or trade secret information for the purpose of aiding him in his new competitive venture with ComSources LLC.  For instance, records demonstrate that Jaffe accessed in rapid succession, one after the other and just minutes apart, areas of the NexTech Bitrix system entitled, among other things, "Leads", "Companies", "Deals", and "Contacts," including what appears to

be approximately twenty "visits" to "Leads," multiple visits to "Deals," and multiple to "Contacts," in addition to extensive visits to "Drive Usage" and "Settings."

41.     These visits, all occurring within mere minutes of each other, lead NexTech to believe, and that facts obtained in discovery will establish, that Jaffe was accessing these sections of the NexTech computer systems in order to misappropriate NexTech's confidential and/or trade secret information contained therein, whether by downloading, printing or otherwise duplicating -- such as by taking a screen shot or taking a photograph of the screen -- the information that Jaffe accessed from these sections of the NexTech computer system on the Friday afternoon prior to his sudden Sunday evening resignation.

42.     Information involving leads, contacts and deals would be highly valuable to a start-up business, such as ComSources LLC, planning to enter the same field of business as NexTech. This is information that NexTech would not share with a competitor, and which was held in a secure manner in the NexTech systems.  No one is able to access the NexTech computer systems without having been issued proper access credentials as authorized by NexTech.

43.     Given that Jaffe resigned effective immediately before the next business day arrived, there could have been no legitimate business purpose for Jaffe's accessing of this information on NexTech's systems on Friday afternoon, March 13.

### _The Threat of Immediate and Irreparable Harm_ <br> _NexTech Faces from Defendants' Conduct_

44.     Defendant Jaffe's course of conduct violates multiple federal statutes, as well as the covenants he agreed to in the APA, including but not limited to his covenant not to engage in any competitive business (Section 7.1.2 of the APA), and his covenant not to solicit or take away Plaintiff's employees, suppliers, contractors, or customers (Section 7.1.3 of the APA), for eighteen (18) months after resignation of his employment.

45.     Jaffe acknowledged and expressly agreed in the APA that a violation of any of the of any of the covenants, obligations or agreements set forth in Section 7.1 of the APA would result in irreparable and continuing damage to NexTech for which there would be no adequate remedy at law and consented to the issuance of injunctive relief in the event of a breach.  See **Ex. A** at § 7.1.4.  Likewise, the DTSA expressly provides for the issuance of injunctive relief to remedy misappropriation and misuse of trade secrets.  See 18 U.S.C. sec. 1836(b)(3)(A)(i).

46.     Defendants' conduct has irreparably harmed and will continue to irreparably harm NexTech if not stopped immediately.  Indeed, NexTech has been damaged, both monetarily and irreparably, by the actual and threatened loss of business, employees, suppliers, contractors, and clients, and by Jaffe's leadership of a directly competitive business in violation of his contractual obligations.

47.     Denial of injunctive relief would leave NexTech vulnerable to the same or similar misconduct from other employees and/or Sellers.

48.     NexTech asks for the Court's assistance in protecting the assets of the business it purchased, and in stopping Defendants' knowing and intentional wrongful conduct in competing unfairly with Plaintiff in violation of federal statutory law, and despite Jaffe having entered into a sale-of-business restrictive covenant prohibiting him from engaging in such competition at all.

## COUNT I
## INJUNCTIVE RELIEF

49.     The allegations of the preceding paragraphs are incorporated by reference herein with the same force and effect as if set forth in full below.

50.     By virtue of the foregoing, NexTech has a substantial likelihood of success on the merits of its claims and a balancing of the equities favors the issuance of an injunction against Defendants.

51.     Unless Defendants are preliminarily and thereafter permanently enjoined from violation of the terms of the APA, NexTech will be irreparably harmed by:

(a) Solicitation and further diversion of NexTech's employees, loss of personnel and talent from its assembled workforce;

(b) Loss of business, goodwill and business reputation; and

(c) Present economic loss, which is unascertainable at this time, and future economic loss, which is presently incalculable.

52.     Jaffe specifically acknowledged that a breach of his restrictive covenants would cause irreparable harm to NexTech, and accordingly agreed that NexTech would be entitled to seek and obtain injunctive relief for any violation thereof.  *See* Section 7.1.4 of the APA, **Exhibit "A"** hereto.

53.     The threatened injury to NexTech far outweighs the damage, if any, to Defendants if the Court enjoins Jaffee from providing services to or being engaged by ComSources LLC, and ComSources LLC from engaging Jaffe, as well as performing any services in any capacity for or on behalf of ComSources, or for the benefit of ComSources LLC, until such time as the Court can determine the merits of the action.  Rather, such injunctive relief will simply preserve the *status quo ante* until such time as the Court may determine the merits of this action.  Unlike NexTech, Defendants will not suffer any reasonably cognizable economic harm.

54.     The public interest favors entry of an injunction because the public has an interest in discouraging reprehensible unscrupulous business practices.

55.     NexTech has no adequate remedy at law and is therefore entitled to injunctive relief.

<u>COUNT II</u>
<u>COMPUTER FRAUD AND ABUSE ACT, 18 USC §§ 1030, *et seq.*</u>
<u>*(Destruction of NexTech Electronically Stored Information)*</u>

56.     The allegations of the preceding paragraphs are incorporated by reference herein with the same force and effect as if set forth in full below.

57.     The NexTech computers used by Jaffe are "protected computers" within the meaning of 18 U.S.C. § 1030(e) because they are computers purchased by NexTech then issued to Jaffe, who used them for the purposes of working for NexTech in interstate or foreign commerce or communication. Likewise, the NexTech company-wide systems, including its Bitrix and NetSuite systems, are computers and computer systems used for the purposes of carrying on the business of NexTech in interstate or foreign commerce or communication.

58.     NexTech is informed and believes, and thereon alleges, that in connection with his planned resignation, Jaffe knowingly, intentionally, and with the intent to defraud NexTech, accessed NexTech's computers and systems without authorization and/or in excess of his authorized scope of access in an effort to delete, destroy and/or render irretrievable e-mails and files from NexTech's computer systems containing NexTech's confidential and proprietary files, trade secrets, important business information and/or other confidential information.

59.     The access of NexTech's computers in excess of Jaffe's authority occurred both shortly before and after Jaffe resigned from NexTech and, on information and belief, he began to work for and to serve ComSources LLC in an effort to transfer NexTech's confidential information to ComSources, to deprive NexTech of commercially useful business information, and to destroy evidence of Jaffe's pre-resignation misconduct, improper planning, and/or other wrongful conduct.

60.     As a result, Jaffe furthered his intended fraud upon NexTech and caused damages and loss to NexTech's computers in excess of $5,000.  This loss includes the cost to NexTech of responding to Jaffe's violations described above, which consisted of an interruption of service and

use of certain of NexTech's computers; a damage assessment; the attempted restoration and recovery of unavailable data and electronically stored information that resided on NexTech's computers to the condition they were in prior to Jaffe's violations; assessment of the extent of unauthorized access and/or access beyond the scope of authorized use, in an attempt to detect any potential additional damage or impairment of data; and the investigation and repair of NexTech's computers and related systems following Jaffe's violations, which caused the impairment and unavailability of the electronically stored information and data that is alleged above.

61.     As a consequence of the foregoing, NexTech has suffered and will continue to suffer irreparable harm, loss and damage, the latter of which includes, but is not limited to, the impairment to the integrity and availability of data and electronically stored information which belonged to NexTech and resided on its computers and computer systems, as alleged above; other business damages including but not limited to loss of capital, loss of valuable business and/or opportunities caused by impairment of access to deleted data, loss of profits and future profits, and loss of good will, all in an amount to be determined at trial, which damages are ongoing and continue unabated at the time of the filing of this Complaint.

**COUNT III**
**VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT, 18 USC §§ 1030, *et seq.***
***(Unauthorized Access and/or Exceeding Scope of Authorization – NexTech Bitrix System)***

62.     The allegations of the preceding paragraphs are incorporated by reference herein with the same force and effect as if set forth in full below.

63.     The NexTech computers used by Jaffe are "protected computers" within the meaning of 18 U.S.C. § 1030(e) because they are computers purchased by NexTech then issued to Jaffe, who used them for the purposes of working for NexTech in interstate or foreign commerce or communication. Likewise, the NexTech company-wide systems, including its Bitrix and

NetSuite systems, are computers and computer systems used for the purposes of carrying on the business of NexTech in interstate or foreign commerce or communication.

64.     NexTech is informed and believes, and thereon alleges, that Jaffe knowingly, intentionally, and with the intent to defraud NexTech, accessed NexTech's computers and its Bitrix system without authorization and/or in excess of his authorized scope of access, in an effort to download, print or otherwise duplicate files containing NexTech's confidential and proprietary files, trade secrets, and other confidential information.

65.     The access of NexTech's computers in excess of Jaffe's authority occurred both shortly before and after Jaffe resigned from NexTech and, on information and belief, he began to work for and to serve ComSources LLC in an effort to transfer NexTech's confidential information to ComSources, to deprive NexTech of commercially useful business information, and to destroy evidence of Jaffe's pre-resignation misconduct, improper planning, and/or other wrongful conduct.

66.     In addition, Jaffe's accessing of the NexTech system after his resignation, which was effective immediately upon delivery on Sunday evening March 15, was without authorization.

67.     As a result, Jaffe furthered his intended fraud upon NexTech and caused NexTech damages and loss to NexTech's computers in excess of $5,000.  This loss includes the cost to NexTech of responding to Jaffe's violations described above, which consisted of an interruption of service and use of NexTech's computers, a damage assessment; the attempted restoration and recovery of unavailable data and electronically stored information that resided on NexTech's computers to the condition they were in prior to Jaffe's violations; assessment of the extent of unauthorized access and/or access beyond the scope of authorized use, in an attempt to detect any potential additional damage or impairment of data; and the investigation and repair of NexTech's

computers and related systems following Jaffe's violations, which caused the impairment and unavailability of the electronically stored information and data that is alleged above.

68.     As a consequence of the foregoing, NexTech has suffered and will continue to suffer irreparable harm, loss and damage, the latter of which includes, but is not limited to, the impairment to the integrity and availability of data and electronically stored information which belonged to NexTech and resided on its computers and computer systems, as alleged above; other business damages including but not limited to loss of capital, loss of valuable business and/or opportunities caused by impairment of access to deleted data, loss of profits and future profits, and loss of good will, all in an amount to be determined at trial, which damages are ongoing and continue unabated at the time of the filing of this Complaint.

### COUNT IV
### VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT, 18 USC §§ 1030, *et seq.*
### *(Unauthorized Access and/or Exceeding Scope of Authorization – NexTech NetSuite System)*

69.     The allegations of the preceding paragraphs are incorporated by reference herein with the same force and effect as if set forth in full below.

70.     The NexTech computers used by Jaffe are "protected computers" within the meaning of 18 U.S.C. § 1030(e) because they are computers purchased by NexTech then issued to Jaffe, who used them for the purposes of working for NexTech in interstate or foreign commerce or communication. Likewise, the NexTech company-wide systems, including its Bitrix and NetSuite systems, are computers and computer systems used for the purposes of carrying on the business of NexTech in interstate or foreign commerce or communication.

71.     NexTech is informed and believes, and thereon alleges, that Jaffe knowingly, intentionally, and with the intent to defraud NexTech, accessed NexTech's computers and its NetSuite system without authorization and/or in excess of his authorized scope of access, in an

effort to download, print or otherwise duplicate files containing NexTech's confidential and proprietary files, trade secrets, and other confidential information.

72.     The access of NexTech's computers in excess of Jaffe's authority occurred both shortly before and after Jaffe resigned from NexTech and, on information and belief, he began to work for and to serve ComSources LLC in an effort to transfer NexTech's confidential information to ComSources, to deprive NexTech of commercially useful business information, and to destroy evidence of Jaffe's pre-resignation misconduct, improper planning, and/or other wrongful conduct.

73.     In addition, Jaffe's accessing of the NexTech system after his resignation, which was effective immediately upon delivery on Sunday evening March 15, was without authorization.

74.     As a result, Jaffe furthered his intended fraud upon NexTech and caused NexTech damages and loss to NexTech's computers in excess of $5,000.  This loss includes the cost to NexTech of responding to Jaffe's violations described above, which consisted of an interruption of service and use of NexTech's computers, a damage assessment; the attempted restoration and recovery of unavailable data and electronically stored information that resided on NexTech's computers to the condition they were in prior to Jaffe's violations; assessment of the extent of unauthorized access and/or access beyond the scope of authorized use, in an attempt to detect any potential additional damage or impairment of data; and the investigation and repair of NexTech's computers and related systems following Jaffe's violations, which caused the impairment and unavailability of the electronically stored information and data that is alleged above.

75.     As a consequence of the foregoing, NexTech has suffered and will continue to suffer irreparable harm, loss and damage, the latter of which includes, but is not limited to, the impairment to the integrity and availability of data and electronically stored information which belonged to NexTech and resided on its computers and computer systems, as alleged above; other

business damages including but not limited to loss of capital, loss of valuable business and/or opportunities caused by impairment of access to deleted data, loss of profits and future profits, and loss of good will, all in an amount to be determined at trial, which damages are ongoing and continue unabated at the time of the filing of this Complaint.

## COUNT V
## MISAPPROPRIATION OF TRADE SECRETS IN VIOLATION OF THE DEFEND TRADE SECRETS ACT, 18 USC § 1831, *et seq.*

76.     The allegations of the preceding paragraphs are incorporated by reference herein with the same force and effect as if set forth in full below.

77.     The above-alleged facts constitute actual and threatened misappropriation of trade secrets by Defendants pursuant to the DTSA, 18 U.S.C. § 1831, *et seq.*, in one or more of the following respects.

78.     NexTech's above-described trade secrets are subject to reasonable efforts by NexTech to maintain their secrecy and/or confidentiality.  NexTech's confidential customer information, including but not limited to information about leads, contacts and deals, is not generally known to the public, nor to competitors such as ComSources LLC who can profit from its disclosure and/or use.  Efforts to maintain secrecy include, but are not limited to, physical security measures on premises, security of computer systems requiring proper usernames and passwords in order to gain access, and further including by having Jaffe enter into contractual duties to maintain and preserve the confidentiality of NexTech's confidential business information.

79.     Defendants have misappropriated and misused NexTech's confidential information without NexTech's consent.  Jaffe engaged in this conduct despite acquiring this information under circumstances giving rise to a duty to maintain the information's secrecy and limit its use, which duty Jaffe owed and continues to owe to NexTech as a former agent, employee, and representative of NexTech.

80. NexTech derives a significant economic benefit from the above-described trade secrets.

81. NexTech faces an immediate threat of continuing irreparable harm, for which NexTech lacks an adequate remedy at law, from Defendants' ongoing misappropriation and misuse of NexTech's trade secrets.

82. Unless Defendants are preliminarily, and thereafter permanently, enjoined from the foregoing conduct, NexTech will be irreparably harmed by:

(a) Disclosure of trade secrets and other confidential information that is solely the property of NexTech;

(b) Use of NexTech's trade secrets to conduct business on behalf of a newly launched NexTech competitor, and/or to solicit customers on behalf of such competitor;

(c) Loss of confidentiality of NexTech's confidential customer information, loss of goodwill, and/or loss of business reputation; and

(d) Potential for future economic loss, which is presently incalculable.

83. Defendants' conduct constitutes a willful and malicious misappropriation of NexTech's trade secrets.

84. Accordingly, NexTech is entitled to injunctive relief to enjoin further legal violations, as well as damages in an amount to be proven at trial, to address as best as possible any harm that cannot be remedied by way of injunctive relief.

## COUNT VI
## BREACH OF CONTRACT

85. The allegations of the preceding paragraphs are incorporated by reference herein with the same force and effect as if set forth in full below.

86.     The APA is a valid and enforceable contract that is supported by adequate consideration.

87.     The APA precludes Defendant Jaffe from, *inter alia*, directly or indirectly competing with NexTech and from soliciting Plaintiff's employees, suppliers, contractors, and clients for an eighteen (18) month period following resignation of his employment with NexTech. See **Ex. A** at §§ 7.1, 9.13.

88.     By virtue of the foregoing conduct, including Jaffe's leadership of ComSources LLC, a business in direct competition with NexTech, and his solicitation and recruitment of Bond, Cockrell, and Richards to compete against NexTech, he has breached the terms of the non-competition and non-solicitation covenants that he agreed to in the APA.

89.     Jaffe's breaching conduct is ongoing and continuing.

90.     As a direct and proximate result of Jaffe's breaches of contract, NexTech has suffered and will continue to suffer substantial irreparable harm and pecuniary loss, which damages are ongoing and continue unabated at the time of filing of this Complaint.

## COUNT VII
## TORTIOUS INTERFERENCE

91.     The allegations of the preceding paragraphs are incorporated by reference herein with the same force and effect as if set forth in full below.

92.     Plaintiff has a valid and enforceable contract with Defendant Jaffe in the APA.

93.     Defendant ComSources LLC was and is aware of the existence, extent and nature of Defendant Jaffe's contractual obligations to Plaintiff.  Indeed, Jaffe himself is Chief Executive Officer of ComSources LLC.  As such, his awareness is ComSources LLC's awareness. Moreover, on information and belief, the sole member of ComSources LLC's limited liability company, Wells Richards, also is aware of the existence of Jaffe's contract with Plaintiff.  Even if

Richards was not expressly aware, he was on reasonable notice to inquire and consequently should have been aware of Jaffe's contractual duties owed to Plaintiff in connection with the transaction reflected in the APA.

94.     Despite actual and constructive knowledge of Jaffe's contractual duties, ComSources LLC has encouraged and facilitated Jaffe's breach of his obligations under the APA, including by (a) installing Jaffe as Chief Executive Officer of ComSources LLC, a direct competitor of NexTech, despite the fact that Jaffe has a contractual duty to refrain from such competition, and (b) recruiting and/or hiring NexTech personnel in concert with Jaffe, who is contractually prohibited from soliciting NexTech  personnel, directly or indirectly, and  (c) potentially additional breaches which have yet to be discovered by Plaintiff.

95.     Defendant ComSources LLC's conduct in inducing, aiding, abetting and/or facilitating Jaffe's breach of his contractual obligations under the APA was and continues to be wrongful, and is without justification or privilege.  Indeed, ComSources LLC, on information and belief, was formed with a purpose at its inception of creating a vehicle through which to facilitate and encourage Jaffe's breach of his restrictive covenants in the APA.  ComSources LLC has engaged in its conduct with the intention of robbing Plaintiff of the value of the assets it bargained for when it purchased assets of NexTech pursuant to the APA.

96.     As a result of Defendant ComSources LLC's conduct, Jaffe in fact has breached the restrictive covenants in the APA, and at this time his breaches remain ongoing and unabated.

97.     As a direct and proximate result of Jaffe's breaches of contract, NexTech has suffered and will continue to suffer substantial irreparable harm and pecuniary loss, which damages are ongoing and continue unabated at the time of filing of this Complaint.

## COUNT VIII
## BREACH OF DUTY OF LOYALTY – REMOVAL AND MISUSE
## OF CONFIDENTIAL BUSINESS INFORMATION

98.     The allegations of the preceding paragraphs are incorporated by reference herein with the same force and effect as if set forth in full below.

99.     As an agent, employee, and representative of NexTech, Jaffe owed NexTech a duty of loyalty.

100.    Jaffe's duty of loyalty included a duty not to exploit for his own benefit, or the benefit of another, the confidential business information which was entrusted to him, and the access to Plaintiff's systems that was entrusted to him, as an employee of NexTech.

101.    The above-described conduct, including but not limited to Jaffe's conduct in removing, disclosing to ComSources LLC, and/or using on behalf of another, Plaintiff's confidential business information, constitutes a breach of Jaffe's duty of loyalty.

102.    As a direct and proximate result of Jaffe's breaches of these duties, NexTech has suffered and will continue to suffer substantial irreparable harm and pecuniary loss, which damages are ongoing and continue unabated at the time of filing of this Complaint.

## COUNT IX
## AIDING AND ABETTING BREACH OF DUTY OF LOYALTY

103.    The allegations of the preceding paragraphs are incorporated by reference herein with the same force and effect as if set forth in full below.

104.    ComSources LLC knew or with the exercise of reasonable diligence should have known that Jaffe owed NexTech a duty of loyalty.

105.    Despite that knowledge, ComSources LLC aided, abetted and/or facilitated Jaffe's violation of that duty.

106.    Moreover, ComSources LLC has knowingly and intentionally accepted the benefits of Jaffe's breaches of his duty of loyalty.

107.    As a result of ComSources LLC's conduct, Jaffe did in fact breach his duties, causing harm and loss to NexTech as described above.

108.    As a direct and proximate result of Jaffe's breaches of these duties, NexTech has suffered and will continue to suffer substantial irreparable harm and pecuniary loss, which damages are ongoing and continue unabated at the time of filing of this Complaint.

## COUNT X
## CIVIL CONSPIRACY

109.    The allegations of the preceding paragraphs are incorporated by reference herein with the same force and effect as if set forth in full below.

110.    Jaffe and ComSources LLC participated in a civil conspiracy with Bond, Cockrell, and/or others to unauthorizedly access NexTech's computers; misappropriate NexTech's confidential information; impair the integrity of NexTech's computer systems, data and business information; and breach and interfere with Jaffe's duty of loyalty to NexTech.

111.    Defendants intended to cooperate, work with and coordinate with one or more persons or entities in order to commit one or more of the causes of actions and/or actions or omissions alleged above and to keep the civil conspiracy secret from NexTech.

112.    Defendants took one or more actions, as alleged above, in furtherance of the conspiracy, including but not limited to, those acts constituting violation of the Computer Fraud and Abuse Act, the Defend Trade Secrets Act, and the conduct constituting breach of duty of loyalty and tortious interference with contract.

113.    The acts described here were willful and malicious and constitute misconduct and/or demonstrate actual malice or such recklessness or negligence as to evince a conscious disregard of the rights of others.

114.    As a consequence of the foregoing, NexTech has suffered and will continue to suffer damage and loss.  NexTech has sustained damages including but not limited to the loss of capital; loss or impairment of the confidentiality of trade secrets and confidential information; loss of valuable business and business opportunities; uncompensated use of NexTech's trade secrets and confidential information; the loss of profits and future profits; the loss of goodwill; and/or other damages, all in an amount to be determined at trial, and all of which damages are ongoing and continue unabated at the time of the filing of this Complaint.

## COUNT XI
## UNJUST ENRICHMENT

115.    The allegations of the preceding paragraphs are incorporated by reference herein with the same force and effect as if set forth in full below.

116.    By virtue of the foregoing conduct, ComSources LLC has been, and if Defendants' conduct continues unabated, will continue to be, enriched as a result, through the wrongful acquisition of business, personnel, revenue, and the services of Jaffe in violation of his duties to Plaintiff.

117.    The enrichment of ComSources LLC has been, and if Defendants' conduct continues unabated will continue to be, at the expense of Plaintiff.  Indeed, it appears that the intent of ComSources LLC and Jaffe has been to deprive Plaintiff of some or all of the value of the assets of NexTech.

118.    The foregoing enrichment is directly related to the loss suffered by Plaintiff, because it is diversion of business, personnel, revenue and/or the services of Jaffe from Plaintiff that has enriched ComSources LLC.

119.    ComSources LLC's conduct in this regard was neither justified nor privileged.

120.    Plaintiff has no adequate remedy at law, and indeed has suffered and will continue to suffer substantial irreparable harm and pecuniary loss, which damages are ongoing and continue unabated at the time of filing of this Complaint.

## PRAYER FOR RELIEF

**WHEREFORE**, by virtue of the foregoing acts and conduct complained of above, Plaintiff NexTech Operations, LLC demands the following relief:

A.    Preliminary and permanent injunctive relief against Defendant Jaffe for a period of eighteen (18) months from the date of Defendant Jaffe's termination of employment with NexTech prohibiting Jaffe from:

(1) Participating in the ownership or control of, acting as an employee, agent, or contractor of, or providing any services to, or for, ComSources LLC, or any other business that is engaged in E-waste services or the buying or selling of used information technology equipment, or engaging in any activity that is competitive with NexTech, its subsidiaries, or affiliates, in any State within the United States;

(2) Soliciting, recruiting, aiding or inducing any employees, suppliers, or contractors of NexTech, its subsidiaries, or affiliates, to leave their employment or affiliation with NexTech in order to accept employment with or render services to another person or entity unaffiliated with NexTech, or hire, affiliate

with, or knowingly take any action to assist or aid any other person or entity in identifying, hiring, or affiliating with any such employee, supplier, or contractor;

(3) Soliciting, aiding, or inducing any customer of NexTech, its subsidiaries, or affiliates, to purchase goods or services then sold or provided by NexTech, its subsidiaries, or affiliates, from any other person or entity, or assist or aid any other persons or entity in identifying or soliciting any such customer;

(4) Otherwise interfering with the relationship of NexTech, its subsidiaries, or affiliates with any of its employees, customers, agents, suppliers, contractors, or representatives;

(5) Further wrongful possession and/or misuse of NexTech's confidential information, including, but not limited to, any and all documents, computer-based files or data, or information in any form, whether originals, copies, compilations or derivations, and whether in electronic or hard copy format, which were removed from NexTech or which were obtained by Jaffe or anyone acting on his behalf or in concert with him;

B.   Preliminary and permanent injunctive relief against Defendant ComSources LLC for a period of eighteen (18) months from the date of Defendant Jaffe's termination of employment with NexTech prohibiting ComSources LLC from:

(1) Engaging in the business of E-waste services or the buying or selling of used information technology equipment, or engaging in any activity that is competitive with NexTech, its subsidiaries, or affiliates, in any State within the United States;

29

(2) Soliciting, recruiting, aiding or inducing any employees, suppliers, or contractors of NexTech, its subsidiaries, or affiliates, to leave their employment or affiliation with NexTech in order to accept employment with or render services to ComSources LLC or any other person or entity unaffiliated with NexTech, or hire, affiliate with, or knowingly take any action to assist or aid any other person or entity in identifying, hiring, or affiliating with any such employee, supplier, or contractor;

(3) Soliciting, aiding, or inducing any customer of NexTech, its subsidiaries, or affiliates, to purchase goods or services then sold or provided by NexTech, its subsidiaries, or affiliates, from ComSources LLC or any other person or entity, or assist or aid any other persons or entity in identifying or soliciting any such customer;

(4) Otherwise interfering with the relationship of NexTech, its subsidiaries, or affiliates with any of its employees, customers, agents, suppliers, contractors, or representatives;

(5) Further wrongful possession and/or misuse of NexTech's confidential information, including, but not limited to, any and all documents, computer-based files or data, or information in any form, whether originals, copies, compilations or derivations, and whether in electronic or hard copy format, which were removed from NexTech or which were obtained by Jaffe or anyone acting on his behalf or in concert with him;

C.    Compensatory damages in an amount to be proven at trial;

D.    Exemplary and/or punitive damages;

E.      Costs and disbursements of this action, including reasonable attorneys' fees and expenses; as well as costs, damages, and computer forensic and related investigation fees pursuant to the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, *et seq.*; and

F.      Such other and further relief as the Court may deem equitable and just.

## **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury as to all issues so triable.

Respectfully submitted,

DATED: May 12, 2020                    */s/ Michele D. Allen*_____
                                        Michele Allen, Esquire (#4359)
                                        Emily Biffen, Esquire (#6639)
                                        **ALLEN & ASSOCIATES**
                                        4250 Lancaster Pike, Suite 230
                                        Wilmington, DE 19805
                                        michele@allenlaborlaw.com
                                        emily@allenlaborlaw.com
                                        (302) 234-8600 office
                                        (302) 234-8602 fax


                                        OF COUNSEL:

                                        Christopher P. Stief, Esquire
                                        Gabrielle A. Giombetti, Esquire
                                        **FISHER & PHILLIPS LLP**
                                        Radnor Financial Center
                                        150 N. Radnor Chester Road, Suite C300
                                        Radnor, PA 19087
                                        (610) 230-2130 (Telephone)
                                        (610) 230-2151 (Facsimile)
                                        cstief@fisherphillips.com
                                        ggiombetti@fisherphillips.com

                                        *pro hac papers to be submitted*

31